## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**SHAWNA V. BLAKE,**

      **Plaintiff,**

**vs.**                      **Case No.  1:17cv140-MW/CAS**

**NANCY A. BERRYHILL,**
**Deputy Commissioner for**
**Operations, performing the**
**duties and functions not reserved**
**to the Commissioner of Social**
**Security,**[1]

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This is a Social Security case referred to the undersigned magistrate

judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and

Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C.

§ 405(g) for review of the final determination of the Deputy Commissioner

for Operations (Commissioner) of the Social Security Administration (SSA)

denying Plaintiff's application for a period of disability and Disability Income

Benefits (DIB) filed pursuant to Title II of the Social Security Act (Act) and

---

[1]  Defendant's title has changed.  *See*
https://www.ssa.gov/agency/commissioner.html (last viewed Apr. 18, 2018).

for Supplemental Security Income (SSI) pursuant to Title XVI of the Act.

After consideration of the entire record, it is recommended that the decision

of the Commissioner be affirmed.

## I. Procedural History

On July 31, 2012, Plaintiff, Shawna V. Blake (Plaintiff or claimant),

filed applications for DIB and SSI, alleging disability beginning July 2, 2010,

based on HIV, Biopar, and aneurysm of the brain.  Tr. 38, 50, 99, 226-36,

288-89, 293.[2]  Plaintiff last met the insured status requirements for DIB on

June 30, 2015.  Tr. 99, 289.

Plaintiff's application was denied initially on October 15, 2012, and

upon reconsideration on January 29, 2013.  Tr. 99, 96-120, 125-51.  On

March 11, 2013, Plaintiff requested a hearing.  Tr. 99, 152-53.  On

September 16, 2014, the video hearing was held before Administrative Law

Judge (ALJ) K. Barlow, who presided over the hearing from Jacksonville,

Florida.  Tr. 15-17, 99.  Plaintiff appeared and testified in Gainesville,

Florida.  Tr. 99, 7-31.  Plaintiff was represented by Pamela C. Dunmore, an

attorney.  Tr. 15, 17, 99, 163-65.  Ronald J. Spitznagel, Ed.D., an impartial

vocational expert, testified during the hearing.  Tr. 99, 29-35, 193

---

[2]  Citations to the transcript/administrative record, ECF No. 10, shall be by the symbol "Tr." followed by a page number that appears in the lower right corner.

(Resume).  After the hearing, on October 14, 2014, the ALJ notified

Plaintiff's counsel of securing additional evidence, specifically, a psychiatric

examination with mental functional capacity form dated October 4, 2014.

Tr. 375.  This issue was a partial reason for the Appeals Council's remand

of the matter to the ALJ because this document was not part of the record.

Tr. 122; *see* below.

On December 29, 2014, the ALJ issued a decision and denied

Plaintiff's applications for benefits, concluding that Plaintiff was not disabled

on July 31, 2012, the date the applications were filed.  Tr. 115.

On February 26, 2015, Plaintiff requested review of the ALJ's

decision and requested an additional 30 days for objections and

exceptions, if any.  Tr. 202-03.  On March 19, 2015, the request for more

time was granted.  Tr. 204.  On May 26, 2016, the Appeals Council vacated

the ALJ's decision of December 29, 2014, and remanded the case to an

ALJ for the purpose of holding a de novo hearing.[3]  Tr. 8, 122.

In an order dated February 23, 2017, the Appeals Council explained

that "[i]n its order [dated May 26, 2016], the Appeals Council wrote that on

October 14, 2014, the results of a psychiatric evaluation with mental

---

[3]  On June 3, 2016, the SSA notified Plaintiff of the remand and explained the
hearing process.  Tr. 211-16.

functional capacity form, dated October 4, 2014, were proffered to the claimant and her representative but that the record did not contain this evidence." Tr. 8. "[S]ubsequent to the remand, it was found that the proffer[red] correspondence labeled Exhibit 19E was a clerical error, and there was never such a consultative examination ordered by the Agency to proffer. Accordingly, the record is now complete." *Id.* The Appeals Council vacated its previous order and granted a period of 20 days "in which the claimant and representative may submit additional evidence and/or arguments." *Id.*

On April 5, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.[4] Tr. 1-4; *see* 20 C.F.R. § 404.981.

On June 12, 2017, Plaintiff, by counsel, filed a Complaint with this Court seeking review of the ALJ's decision. ECF No. 1. The parties filed memoranda of law. ECF Nos. 19 and 20.

## II. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct

---

[4] The Appeals Council looked at a medication list dated June 29, 2016 (3 pages), Tr. 6-14, and determined this was new information about a later time and "does not affect the decision about whether [Plaintiff was] disabled beginning on or before December 29, 2014." Tr. 2.

legal principles.  42 U.S.C. § 405(g); <u>Chester v. Bowen</u>, 792 F.2d 129, 131

(11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less

than a preponderance.  It is such relevant evidence as a reasonable person

would accept as adequate to support a conclusion." <u>Bloodsworth v.</u>

<u>Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); *accord*

<u>Moore v. Barnhart</u>, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The

Commissioner's factual findings are conclusive if supported by substantial

evidence." <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1221 (11th Cir. 2002)

(citations omitted).[5]

"In making an initial determination of disability, the examiner must

consider four factors: '(1) objective medical facts or clinical findings; (2)

diagnosis of examining physicians; (3) subjective evidence of pain and

disability as testified to by the claimant and corroborated by [other

observers, including family members], and (4) the claimant's age,

---

[5] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." <u>Tieniber v. Heckler</u>, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" <u>Cowart v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

education, and work history.'" Bloodsworth, 703 F.2d at 1240 (citations omitted). A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. §§ 404.1505(a), 404.1509 (duration requirement).

Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212 (2002). In addition, an individual is entitled to DIB if she is under a disability prior to the expiration of her insured status. *See* 42 U.S.C. § 423(a)(1)(A); Moore v. Barnhart, 405 F.3d at 1211; Torres v. Sec'y of Health & Human Servs., 845 F.2d 1136, 1137-38 (1st Cir. 1988); Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

The Commissioner analyzes a claim in five steps. 20 C.F.R. § 404.1520(a)(4)(i)-(v).

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the RFC to perform work despite limitations and are there any impairments which prevent past relevant work?[6]

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in

disapproval of the application for benefits.  A positive finding at step three

results in approval of the application for benefits.  At step four, the claimant

---

[6] An RFC is the most a claimant can still do despite limitations.  20 C.F.R. § 404.1545(a)(1).  It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records.  *Id.*  Although an ALJ considers medical source opinions, the responsibility for determining claimant's RFC lies with the ALJ.  20 C.F.R. § 404.1546(c); *see* SSR 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) (rescinded eff. Mar. 27, 2017) ("The term "residual functional capacity assessment" describes an adjudicator's finding about the ability of an individual to perform work-related activities.  The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence."); *see also* Cooper v. Astrue, 373 F. App'x 961, 962 (11th Cir. 2010) (unpublished) (explaining claimant's RFC determination "is within the province of the ALJ, not a doctor").  The Court will apply the SSR in effect when the ALJ rendered her decision.  *See generally* Bagliere v. Colvin, No. 1**:**16CV109, 2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), *adopted*, 2017 U.S. Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work.  If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.  If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.  Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g).[7] An ALJ may make this determination either by applying the Grids or by obtaining the testimony of a vocational expert.  Phillips, 357 F.3d at 1239-40; *see* 20 C.F.R. pt. 404, subpart. P, app. 2.  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

---

[7]  In general, the legal standards applied are the same regardless of whether the claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416).  Therefore, citations herein should be considered to refer to the appropriate parallel provision.  The same applies to citations of statutes or regulations found in quoted court decisions.

The Act precludes a finding of disability if drug addiction or alcoholism (DAA) are a contributing factor material to the determination that the claimant is disabled.  20 C.F.R. § 404.1535; <u>Doughty v. Apfel</u>, 245 F.3d 1274, 1278-79 (11th Cir. 2001).  In deciding whether the claimant's DAA is material to the disability determination, the key factor is "whether [the ALJ] would still find [the claimant] disabled if [she] stopped using drugs or alcohol."  20 C.F.R. § 404.1535(b)(1).  To make this determination, the ALJ evaluates "which of [the claimant's] physical and mental limitations, upon which we based our current disability determination, would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [of the claimant's] remaining limitations would be disabling."  20 C.F.R. § 404.1535(b)(2).  Plaintiff bears the burden of proving that she would still be disabled if she stopped using drugs or alcohol.  <u>Doughty</u>, 245 F.3d at 1275-76, 1280-81; *see generally* 20 C.F.R. § 404.1512(a); <u>Moore</u>, 405 F.3d at 1211.  Accordingly, the ALJ determined whether Plaintiff's substance use is a contributing factor material to the determination of disability.  Tr. 109-15.

## III.  Legal Analysis

### Substantial evidence supports the ALJ's determination that Plaintiff is not disabled.

#### A.

Plaintiff challenges the reasonableness of the ALJ's finding that Plaintiff's substance use (abuse) was material to the determination of disability.  ECF No. 19 at 17.  Plaintiff also argues the ALJ erred in discounting the opinion of Sanford Kaufman, M.D., at Meridian.  ECF No. 19 at 19-22.

#### B.

The ALJ made several findings.  Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2015. Tr. 101.  Plaintiff has not engaged in substantial gainful activity (SGA) since July 2, 2010, the alleged onset date.  Tr. 102.  Plaintiff's work after the alleged onset date did not rise to the level of SGA.  *Id.*

Plaintiff has the following severe impairments: asymptomatic HIV, history of an aneurysm, affective disorder, anxiety related disorder, and substance abuse disorder.  *Id.*

Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  Tr. 102.  The ALJ determined that

Plaintiff's mental impairments, including the substance abuse disorder, do not meet Listings 12.04 (affective disorders) or 12.06 (anxiety related disorders).  The ALJ considered the "paragraph B" criteria and determined that Plaintiff has *mild* restriction in activities of daily living and *moderate* difficulties in social functioning and with regard to concentration, persistence, or pace, and *no* episodes of decompensation, which have been of extended duration.[8]  Tr. 102-03.

The ALJ determined that based on all of the impairments, including the substance use disorder, Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) "with simple routine tasks and no exposure to the public in an environment that basically stays the same with only occasional changes in work setting; while continuing to abuse drugs, the claimant requires only one to two step instructions and the ability to take breaks at will due to loss of concentration."  Tr. 104.  In making this

---

[8]  The ALJ considered Dr. Kaufman's March 17, 2017, mental RFC assessment. Dr. Kaufman indicated Plaintiff "has moderate restrictions in social interaction."  Tr. 103. He also indicated Plaintiff "has mostly moderate restrictions in sustained concentration and persistence – with the exception of marked limitations in the ability to work in coordination with or proximity to others without being distracted by them and in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Exhibit 13F/2).  In Disability Determinations, State agency psychological consultants reviewed the record and opined that the claimant has moderate difficulties in maintaining concentration, persistence, and pace (Exhibits 2A and 5A)."  Tr. 103.  The ALJ found Plaintiff had no more than moderate restriction in this area.  *Id.*

determination, the ALJ considered relevant medical evidence, including

psychological examination by non-treating medical sources, and the

opinion of Dr. Kaufman discussed in more detail *infra* at 23-27.  Tr. 107-08.

Plaintiff is unable to perform any past relevant work such as cashier

II, light exertion, unskilled with an SVP of 2; cleaner, industrial, medium

exertion, unskilled with an SVP of 2; cleaner, housekeeping, light exertion,

unskilled with an SVP of 2; and telephone solicitor, sedentary exertion,

semiskilled with an SVP of 3.[9]  Tr. 108; *see* Tr. 30-33.

Plaintiff was 34 years old, which is defined as a younger individual

age 18-49, on the alleged disability onset date.  *Id.*  Plaintiff has a limited

---

[9] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568(a).  A Specific Vocational Preparation (SVP) of 1 means "short demonstration only."  Dictionary of Occupational Titles (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP.  An (SVP) of 2 means "[a]nything beyond short demonstration up to and including 1 month."  *Id.*  "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  *Id.*  Unskilled work corresponds to an SVP of 1 and 2.  Social Security Ruling (SSR) 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000).  Semi-skilled work corresponds to an SVP of 3 and 4.  *Id.*  Further, unskilled work is work involving understanding, remembering, and carrying out simple instructions; making simple work-related decision; dealing with changes in a routine work setting; and responding appropriately to supervision, co-workers, and usual work situations.  SSR 85-15, 1985 SSR LEXIS 20, at *10-11 (1985).  In part, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).

education and is able to communicate in English.  *Id.*  Plaintiff's acquired

job skills do not transfer to other occupations within the RFC.  *Id.*

The ALJ considered whether a successful adjustment to other work

could be made by Plaintiff and, as a result, considered Plaintiff's RFC, age,

education, and work experience in conjunction with the Medical-Vocational

Guidelines (Grids).  Tr. 108-09.  "If the claimant had the [RFC] to perform

the full range of light work, considering the claimant's age, education, and

work experience, a finding of 'not disabled' would be directed by Medical-

Vocational Rule 202.18."  Tr. 109; *see* 20 C.F.R. pt. 404, subpt. P, App. 2

(Table No. 2).  The ALJ determined, however, that "the claimant's ability to

perform all or substantially all the requirements of this level work [full range

of light work] has been impeded by additional limitations, including the

substance use disorder."  Tr. 109.  To determine the extent of the erosion

of the unskilled light occupational base caused by these limitations, the ALJ

asked the vocational expert whether representative jobs exist in the

national economy for an individual with the claimant's age, education, work

experience, and RFC.  *Id.*  The vocational expert testified that such an

individual could *not* perform any jobs.  *Id.*; *see* Tr. 33-34.

Based on the vocational expert's testimony, the ALJ concluded that,

"considering all of the claimant's impairments, including the substance use

disorder, the claimant is unable to make a successful vocational adjustment to work that exists in significant numbers in the national economy.  A finding of 'disabled' is, therefore, appropriate under the framework of the above-recited rule if the substance disorder is deemed not to be material to this finding."  *Id.*

Thereafter, the ALJ considered Plaintiff's circumstances, including disability, if she stopped the substance use.  *Id.*  If the claimant stopped the substance use, the remaining limitations, specifically asymptomatic HIV, history of aneurysm, affective disorder, and anxiety related disorder, would cause more than a minimal impact on Plaintiff's ability to perform basic work activities; therefore, Plaintiff would continue to have a severe impairment or combination of impairments.

If Plaintiff stopped the substance use, she would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*  Based on a mental status examination in May 2014 (Dr. Kaufman), the ALJ noted there were no differences in daily living activities noted and no disability restrictions reported.  Tr. 109.  The ALJ determined that Plaintiff would have no more than *moderate* difficulties in social functioning and

regarding concentration, persistence, or pace if the substance use was stopped.  Tr. 109-10.

The ALJ noted that treatment records from Meridian Behavioral Healthcare (Meridian) indicated Plaintiff successfully completed a substance abuse program on May 28, 2014, and thereafter, she was assigned a Global Assessment of Functioning (GAF) score of 64 indicating mild mental symptomology.  (*See infra* at 20, n.10, for Plaintiff's GAF scales in chronological order.  For example, Plaintiff had a GAF scale of *65* on March 17, 2014, the date of Dr. Kaufman's first examination and assessment, but lower scores thereafter, *e.g.*, 57.  *Id.*)  The ALJ further noted that Plaintiff testified that Celexa works 'pretty good' at the higher dosage.  Tr. 110.  Plaintiff would experience no episodes of decompensation.  *Id.*

If Plaintiff stopped the substance use, she would have the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) "with simple and routine one to two step tasks and no exposure to the public in an environment that basically stays the same with only occasional changes in the work setting."  Tr. 111.

If Plaintiff stopped the substance use, she would continue to be unable to perform past relevant work such as cashier II, cleaner, industrial, cleaner, housekeeping, and telephone solicitor.  Tr. 113.

Transferability of job skills remained immaterial to the determination of disability because using the Grids as a framework supports a finding that Plaintiff is "not disabled," whether or not she has transferable job skills. Tr. 114.

If Plaintiff stopped the substance use, considering her age, education, work experience and RFC, there would be a significant number of jobs in the national economy that Plaintiff could perform such as a bagger, assembler, plastic hospital products, and assembler, small products I, all light exertion, unskilled, all with an SVP of 2.  *Id.*; *see* Tr. 33-34; *see also supra* at 11-12, n.9.  The ALJ also determined that a finding of "not disabled" was appropriate under Grid Rule 202.18.  *See* 20 C.F.R. pt. 404, subpt. P, app. 2 (Table No. 2).

The substance use disorder is a contributing factor material to the determination of disability because Plaintiff would not be disabled if she stopped the substance use.  Tr. 115; *see* 20 C.F.R. §§ 404.1520(g), 404.1535.  The ALJ determined that because the substance use disorder is a contributing factor material to determination of disability, Plaintiff has not

been disabled within the meaning of the SSA at any time from the alleged

onset date to the date of the ALJ's decision.  Tr. 115.

## C.

The ALJ determined Plaintiff's substance use material to the

determination of her disability because if using substances, Plaintiff would

need the ability to take breaks at will due to loss of concentration, whereas

if not using substances, she would not need such breaks.  *See, e.g.*, Tr. 34,

107, 110, 112 ("Specifically, without the disorientation of drug abuse, the

claimant maintains an ability to stay on task and no longer requires breaks

at will.")  Substantial evidence supports the ALJ's finding that Plaintiff would

need breaks at will when using substances, but would not need such

breaks when not using substances.  These substances included Plaintiff

using marijuana, cocaine, and alcohol.  Tr. 104-05, 107, 110, 112.

In November 10, 2010, Plaintiff presented for a consultative

examination with Janet K. Humphreys, Ph.D., at the request of Division of

Disability Determinations (DDD), to rule out a disabling psychological

condition.  Tr. 104-05, 561-64.  At that time, Plaintiff alleged disability due

to HIV, bronchitis, depression, and post-traumatic stress disorder (PTSD).

Tr. 561.  Dr. Humphreys' diagnostic impressions included Bipolar I

Disorder, most recent episode mixed with psychotic features, PTSD,

chronic anxiety disorder NOS.  Tr. 563.  The summary included a

statement of Plaintiff's ability to do work-related activities: "Ms. Blake's

memory appeared intact.  Her concentration appeared mildly impaired, and

may impact her ability to carry out complex instructions.  Her social skills

and judgment may be affected by her mood disorder and anxiety."  *Id.*  The

ALJ afforded this opinion "great weight, as the doctor had an opportunity to

examine the claimant before forming her opinion."  Tr. 105.

On October 9, 2012, Plaintiff was referred to William E. Benet, Ph.D.,

Psy.D., by the DDD for a clinical evaluation and mental status examination.

Tr. 762; *see* Tr. 105-06.  Diagnostic impressions included mood disorder

NOS, with questionable psychotic features; panic disorder with

agoraphobia; rule out PTSD; and polysubstance dependence (cocaine,

cannabis, alcohol), in partial remission.  Tr. 765.  Plaintiff was assigned a

current GAF score of 50-55.  Tr. 766; *see infra* at 20, n.10.  Prognosis was

guarded.  Tr. 766.  Recommendations included psychiatric and

psychological management of mood and panic disorders, possible PTSD,

and polysubstance dependence.  Tr. 766.  The ALJ considered Dr. Benet's

evaluation as part of the first RFC determination and noted, in part:

> In his report, Dr. Benet noted the claimant's cognitive functioning was
> intact, with no impairment in reasoning or memory functioning.  He
> further noted, "Ms. Blake should be able to perform work-related
> mental tasks consistent with her previous employment

(housekeeping) involving understanding and memory, but is likely to
have moderate to marked difficulty performing tasks involving
sustained concentration persistence, social interaction and
adaptation." (Exhibit 10F) [Tr. 765]. This opinion is accorded great
weight, as a doctor had an opportunity to examine the claimant
before forming his opinion. However, there is no indication in the
record that the claimant would be incapable of performing simple and
tasks with one to two step instructions. For example, the claimant is
able to read Bible verses for inspiration. She is able to prepare
meals, and perform household chores.

Tr. 106.

The ALJ considered Plaintiff's treatment records from Meridian when
determining if Plaintiff stopped the substance use, whether she would have
an impairment or combination of impairments that meets or medically equal
impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.
Tr. 109-10. These records were also considered when the ALJ determined
Plaintiff's RFC (for the second time) to perform light work with limitations if
she stopped her substance use. Tr. 111-12. Regarding Plaintiff's second
RFC determination, the ALJ stated, in part:

The claimant testified that she has a history of cocaine use, noting
that she was using drugs in June 2012 while working at Motel 6.
However, the claimant also testified that she completed a 30-day
inpatient program for substance abuse on May 28, 2014. She is to
be commended for her current sobriety and encouraged to continue
with this abstinence.

The claimant testified that she is HIV positive; however, she is
asymptomatic. The claimant testified that she goes to the health
department every six months. Side effects of the antiretroviral drugs

include insomnia, nausea, and dizziness. However, the claimant noted that she takes her medication in the evening.

The record reveals that when the claimant stopped her substance use, her remaining medically determinable impairments could reasonably be expected to produce some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible as they are no longer consistent with her medical treatment and activities of daily living. *Specifically, without the disorientation of drug abuse, the claimant maintains an ability to stay on task and no longer requires breaks at will.*

On mental status examination in May [1,] 2014, the claimant's eye contact was appropriate. Her appearance and hygiene appeared appropriate. Her demeanor was appropriate to the situation. Observed activity was not clinically significant. There was no indication of suicidal thoughts. No hallucinations were reported and the claimant did not appear to be responding to internal stimuli. Thought process appeared to be goal directed and logical. The claimant's mood was euthymic. Her affect was broad and within normal limits. The claimant expressed interest in day-to-day activities and events, and she reported feeling hopeful about the future. There were no deficits in daily living activities noted (Exhibit 15F/6) [Tr. 919]. No disability restrictions were reported (Exhibit 15F/5) [Tr. 918].

Treatment records from Meridian Behavioral Healthcare indicate that the claimant successfully completed a substance abuse program on May 28, 2014 (Exhibit 15F/9) [Tr. 922]. Thereafter, the claimant was diagnosed with a Mood Disorder with symptoms of anxiety, depression, and hypomania. She was assigned a global assessment of functioning (GAF)[10] of 64--indicating mild mental

---

10  Plaintiff had a GAF scale of *64* on May 8, 2013, Tr. 916-17; a GAF scale of *65* on January 17, 2014, Tr. 930-31 (Sarah Frazier, M.D.); a GAF scale of *65* on March 17, 2014, (Plaintiff's first visit with Dr. Kaufman and the date of his mental RFC assessment, Tr. 801-03), Tr. 933-34; a GAF scale of *57* on May 1, 2014, Tr. 920-21 (Julie Devin, MSW); a GAF scale of *57* on May 28, 2014, Tr. 924 (same); and a GAF scale of *57* on August 7, 2014, (Plaintiff's second and last reported visit with Dr. Kaufman), Tr. 936-37. The American Psychiatric Association: *Diagnostic and Statistical Manual of Mental*

symptomology (e.g., depressed mood and mild insomnia OR some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships) (Exhibit 15F/3) [Tr. 916].[11]  The record indicates that the claimant's mental symptomology is mild when abstinent from drug use.

In terms of a physical impairment, as noted above, the claimant developed an ophthalmic artery aneurysm (Exhibit 6F/21-22), and she underwent successful stent-assisted coiling of the right ophthalmic aneurysm in June 2012 (Exhibit 6F/50-51).  Treatment notes indicate that there has been no change in the claimant's

---

*Disorders* (DSM-IV-TR) (4th Ed. Text Revision 2000) includes the GAF Scale that is primarily used by mental health practitioners.  The GAF Scale is used to report "the clinician's judgment of the individual's overall level of functioning" (with regard to only psychological, social, and occupational functioning) and "may be particularly useful in tracking the clinical progress of individuals in global terms, using a single measure." *See* DSM-IV-TR 32-34.  The GAF scale is divided into 10 ranges of functioning, each with a 10-point range in the GAF scale.  *Id.  See* Nichols v. Astrue, Case No. 3:11cv409/LC/CJK, 2012 U.S. Dist. LEXIS 119347, at *26-29 (N.D. Fla. Aug. 7, 2012) (discussing the GAF scale).  A GAF scale of 31-40 is defined as manifesting "[s]ome impairment in realty testing or communication (e.g., speech is at times illogical, obscure, or irrelevant)" or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood."  DSM-IV-TR at 34.  A GAF scale rating of 41-50 is indicative of serious symptoms or any serious impairment in social, occupational or school functioning.  *Id.*  A GAF scale rating of 51 to 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  *Id.*  A GAF scale rating of 61 to 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning, "but generally functioning pretty well, has some meaningful interpersonal relationships."  *Id.*  The "Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'"  Wind v. Barnhart, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (unpublished) (citing 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)).  In the Fifth Edition of the *Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) (2013), "[i]t was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice.  In order to provide a global measure of disability, the WHO DSM-5 (see the chapter "Assessment Measures")."  DSM-5 at 16.

[11]  The date of this patient record is May 8, 2013, and Plaintiff received a GAF scale of *64*.  Tr. 914-17.

visual acuity and no complication from the surgical intervention (Exhibit 7F/5).

On August 2, 2012, the claimant presented to the Department of Neurology with complaints of chronic headaches. The claimant noted that she has had headaches since the age of 30 with an undetermined etiology. The claimant reported that the headaches are daily and continue throughout the day with little variation. The headaches are generalized, pounding, and associated with photophobia and occasional nausea (Exhibit 7F/5). However, the physical examination was unremarkable (Exhibit 7F/7).

Due to the claimant's alleged daily headaches, the undersigned has included the limitation of simple one-to-two step instructions in the assigned residual functional capacity (RFC) assessment. However, further limitation is not supported by the medical evidence of record. For example, on December 14, 2012, the claimant presented for a routine 6-month follow up angiogram. The claimant denied any severe headaches or new neurological deficits. On examination, the claimant's muscle strength was normal throughout, and there was no decrease in sensation in the arms and legs to pin and touch (Exhibit 6F/90). The angiogram indicated stable 100% coil obliteration of the previously stented and coiled right ophthalmic aneurysm (Exhibit 6F/94).

As noted above, the claimant has asymptomatic human immunodeficiency virus (Exhibit 8F). The claimant has denied chills, fever, and night sweats. She has denied lesions, rashes, and sores on the skin. The claimant has denied bleeding gums, mouth pain, and mouth sores/lesions. The claimant has denied pain with swallowing and sore throat. The claimant has denied neck pain and stiffness. The claimant has denied cough and difficulty breathing. The claimant has denied cardiovascular pain, lightheadedness or dizziness. The claimant has denied vomiting, abdominal pain, and rectal bleeding (Exhibit 8F/7). What is more, the claimant's CD4 count has been normal and her viral load has been undetectable (Exhibits 6F, 8F and 14F), and the claimant has had unremarkable physical examinations (see *e.g.,* Exhibit 14F/35-36).

In a Supplemental HIV Questionnaire, the claimant reported that she has nausea, headaches, severe fatigue, and night sweats as a result of the virus (Exhibit 15E). However, a review of the medical records indicates that the claimant has not experienced significant symptoms or complications secondary to HIV.

The undersigned notes that the above residual functional capacity assessment is supported by the level of care the claimant has received and the results of diagnostic testing, clinical findings, and fairly benign neurological and musculoskeletal assessments and examinations of record as detailed above.

Tr. 112-13 (emphasis added).

In the decision, the ALJ first considered Dr. Kaufman's March 17, 2014, opinion (mental RFC assessment) at the initial step three determination. Tr. 103; *see* Tr. 801-03 (Exhibit 13F).[12]  As part of the second RFC determination, the ALJ gave Dr. Kaufman's opinion (assessment)

---

[12]  Dr. Kaufman's assessment was a series of checkbox notations without written explanation of his opinion, which courts have found are "not particularly informative" and are "weak evidence at best."  *See* Teague v. Astrue, 638 F.3d 611, 615 (8th Cir. 2011) ("Given that the 'check-off form' did not cite any clinical test results or findings and Dr. Lowder's previous treatment notes did not report any significant limitations due to back pain, the ALJ found that the MSS was entitled to 'little evidentiary weight.'"); Dixon v. Astrue, No. 5:09-cv-320/RS/EMT, 2010 U.S. Dist. LEXIS 125831, at *46-48 (N.D. Fla. Oct. 26, 2010) (explaining that ALJ properly rejected opinions expressed by treating physician on "check-off" type forms where treating physician's own treatment notes did not support opinions expressed on those forms); Jones v. Comm'r of Soc. Sec., 478 F. App'x 610, 612 (11th Cir. 2012) (unpublished) (holding that the boxes checked by the doctors did not constitute their actual RFC assessment because checking boxes did not indicate the degree and extent of the claimant's limitations; *see also* Foster v. Astrue, 410 F. App'x 831, 833 (5th Cir. 2011) (unpublished) (physicians use of "questionnaire" format typifies "brief or conclusory" testimony).  Dr. Kaufman did not provide an acceptable explanation for his opinions or refer to objective medical evidence to support his opinions.  *See* Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159-60 (11th Cir. 2004).

> great weight to the extent it is consistent with the assessed [RFC].
> However, to the extent that the opinion contains greater or additional
> restrictions than the assessed [RFC], the undersigned gives it little
> weight, as those restrictions are not consistent with the medical
> evidence of record for supported by the record as a whole. For
> example, the undersigned finds that the doctor's assessment
> addresses the claimant's functioning when she is abusing drugs;
> however, the assessment is not consistent with the claimant's
> functioning when she is drug free (*see[,] e.g.*, Exhibit 15F) [Tr. 914-
> 37].

Tr. 107-08.

Dr. Kaufman rendered his mental RFC assessment on the same date

(the first of two consultations) he met with and assessed Plaintiff. Tr. 932-

34. Subjective remarks are noted. Tr. 932. The objective assessment was

generally normal. Tr. 932-33. It is noted, in part, that Plaintiff's thought

process appears to be goal-directed and logical; mood is euthymic; her

observed affect was broad and within normal limits and congruent with her

reported mood; her behavior was cooperative and within normal limits for

the situation; she was oriented in four spheres; her memory appeared

grossly intact, and she appears to function in the average or above average

range. Tr. 933. Plaintiff had the ability to appreciate the implications of her

symptoms and was capable of making appropriate decisions regarding

safety and care. Regarding future orientation, Plaintiff finds pleasure in

daily life, reports feeling hopeful about the future with no past attempts of

suicide, self-harm or violence to others reported. There were indications of

physical illness or injury, HIV-positive, and history of aneurysm.  Plaintiff

denied current physical injury, but reported using tobacco.  *Id.*  There was

no indication of homicidal or suicidal thoughts.  *Id.*

Dr. Kaufman diagnosed Plaintiff with mood disorder NOS, HIV

positive and history of aneurysm.  *Id.*  Plaintiff received a GAF scale of 65.

*Id.*; *see supra* at 20, n.10.  Plaintiff reported no new clinical concerns and it

is noted: "There is evidence of recent stressful events and the patient

displays symptoms.  There is no change noted in the patient's condition.

[P]t with mood do nos, to take the abilify in addition to other meds unable to

work."  *Id.*; *see* Tr. 934.

On the same date as the above evaluation, Dr. Kaufman was

requested to complete a mental RFC assessment, answering each

question as it related to Plaintiff's condition as of April 25, 2013.  Tr. 801.

(It appears Plaintiff's first visit at Meridian was on May 8, 2013, for a

"biopsychosocial evaluation."  Tr. 914-17.  Plaintiff was diagnosed with a

mood disorder NOS and received a GAF scale of 64.  Tr. 916; *see supra* at

20, n.10.)

Dr. Kaufman, on the check-off form, *see supra* at 23, n.12, described

Plaintiff's level of limitation as *moderate* in understanding and memory and

sustained concentration and persistence, *except* for the ability to work in

coordination with or proximity to others without being distracted by them and the ability to complete a normal workday and workweek, which were *marked*.  Tr. 801-02.  The ALJ considered Dr. Kaufman's assessment. Tr. 103.  Dr. Kaufman described Plaintiff's limitations regarding social interaction as *moderate*, except for her ability to travel in unfamiliar places or use public transportation, which was *marked*.[13]  Tr. 803.  The ALJ limited Plaintiff to light work "with simple routine one to two step tasks and no exposure to the public in an environment that basically stays the same with only occasional changes in the work setting," if she stopped the substance use.  Tr. 111.

---

[13]  Any conclusions to be drawn from Dr. Kaufman's marked conclusions as relating to a disability would not be entitled to any special weight or deference, however. The regulations expressly exclude such a disability opinion from the definition of a medical opinion because it is an issue reserved to the Commissioner and a medical source is not given "any special significance" with respect to issues reserved to the Commissioner, such as disability.  20 C.F.R. § 404.1527(d)(1), (3); SSR 96-5p, 1996 SSR LEXIS 2, at *6 (July 2, 1996) (rescinded eff. Mar. 27, 2017).  In Lewis v Callahan, the court noted "that we are concerned here with the doctors' evaluations of [the claimant's] condition and the medical consequences thereof, not their opinion of the legal consequences of his condition.  Our focus is on the objective medical findings made by each doctor and their analysis based on those medical findings."  125 F.3d at 1440.  Further, to the extent there is an inference from Dr. Kaufman's evaluation that Plaintiff could not work, that was not a medical opinion and was not entitled to any special significance.  20 C.F.R. § 404.1527(d); Zambrano v. Soc. Sec. Admin., 2018 U.S. App. LEXIS 2531, at *9 n.1 (11th Cir. Jan. 30, 2018).

As part of the first RFC determination, the ALJ also considered the

opinions of State agency psychological consultants and accorded them

"some weight."  Tr. 107.

> As for the opinion evidence, the undersigned has considered the
> opinions of the State agency psychological consultants who reviewed
> the record initially and on reconsideration (Exhibits 2A and 5A)
> [Tr. 54-55, 57-61; 70-72, 74-76].  The doctors' opinions have been
> accorded some weight, as the doctors are disability specialist who
> reviewed the evidence of record and considered all of the objective
> facts at time the rendered their opinion.  However, giving the claimant
> some benefit of the doubt, the undersigned has included additional
> limitations to the [RFC] assessment as described above.  *For
> example, the undersigned finds that with the claimant's substance
> abuse, she will need to take breaks at will.*
>
> The State agency medical consultant's physical assessment is given
> great weight because it is consistent with the record as a whole.

Tr. 107 (emphasis added); *see* Tr. 54-55, 57-61 (Exhibit 2A -- Initial Level,

Yamir Laboy, Psy.D., Oct. 12, 2012); 70-78 (Exhibit 5A -- Reconsideration

Level, Judith E. Meyers, Psy.D., Jan. 22, 2013; Frank Walker, M.D., Jan.

29, 2013).[14]

---

[14]  Although not given the same controlling weight or deference as the opinion of
treating physicians, the findings of a state agency medical consultant regarding the
nature and severity of a claimant's impairments must be treated as expert opinion at the
ALJ and Appeals Council levels of administrative review.  *See* SSR 96-6p, 1996 SSR
LEXIS 3, at *4 (July 2, 1996) (rescinded and replaced by SSR 17-2p eff. Mar. 27, 2017).
The findings of a State agency medical consultant may provide additional evidence to
support the ALJ's findings.  *See* Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).

Notwithstanding the above, the ALJ, aided by the vocational expert, *see* Tr. 30-34, determined Plaintiff was "unable to make a successful vocational adjustment to work," and, as a result, determined that Plaintiff is disabled "*if* the substance use disorder is deemed not to be material to this finding." Tr. 109 (emphasis added).

The ALJ considered whether Plaintiff was disabled *if* she stopped the substance use and the ALJ concluded that she was not disabled. Tr. 109-15. The ALJ returned to the Meridian and other medical records, including Plaintiff's successful discharge from Meridian, re-determined her RFC, and ultimately concluded that Plaintiff could perform jobs *if* she stopped the substance use. *Id.*

### D.

Plaintiff argues the ALJ's finding that her cocaine, marijuana, and alcohol use (abuse) materially impacted her ability to work is "logically untrue because Plaintiff Blake's supportive family has supplied employment during the Plaintiff's years of past drug abuse." ECF No. 19 at 17. And, "since the record is clear that Plaintiff was both abusing drugs and employed, the drug use is not a material factor to employability." *Id.* at 18.

The Commissioner's response is persuasive. ECF No. 20 at 9. By arguing that Plaintiff could still work while taking drugs, Plaintiff argues the

ALJ should not have found her disabled initially since the ALJ's initial finding of disability was premised solely on the need for extra breaks due to substance abuse. *See, e.g.*, Tr. 34, 107, 110, 112. Plaintiff says she would not require additional breaks at will due to substance abuse. If that were the case, then the ALJ's decision that she is not disabled is still supported by the evidence because without that limitation Plaintiff could work. Tr. 111-14. Nevertheless, it is Plaintiff's burden to show that she would be disabled in the absence of substance use and she has not done so. *See* Doughty v. Apfel, 245 F.3d at 1275-76, 1280-81.

Further, Plaintiff's work for her mother while using drugs does not establish that her substance use was not affecting her work performance. It is difficult to ascertain the conditions under which she worked for her mother while experiencing the negative effects of drug use. In fact, Plaintiff noted her mother and father were helping to support her. ECF No. 19 at 18. (Plaintiff's mother had a history of substance abuse. Tr. 562, 763.)

On the other hand, Plaintiff did not address the evidence indicating that Plaintiff's substance use negatively impacted her functioning, including the opinion of Dr. Benet, who when considering her substance abuse and her other impairments, found she would have moderate to marked difficulty staying on task. Tr. 765. The evidence from Meridian shows that Plaintiff's

functioning improved when not abusing substances. Tr. 918-20. Plaintiff successfully completed her adult substance abuse program on May 28, 2014. Tr. 922.

Substantial evidence reports the ALJ's determination that Plaintiff was disabled when using substances, but not disabled when not using substances and the determination that Plaintiff's substance use (abuse) was material to the determination of disability.

E.

As the finder of fact, the ALJ is charged with the duty to evaluate all the medical opinions of the record and resolve conflicts that might appear. 20 C.F.R. § 404.1527.[15] When considering medical opinions, the following factors apply for determining the weight to give to any medical opinion: (1) the frequency of examination and the length, nature, extent of the treatment relationship; (2) the evidence in support of the opinion, such as "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight" that opinion is given; (3) the opinion's consistency with the record as a whole;

---

[15] This provision applies to claims filed before March 27, 2017. For claims filed after that date, section 404.1520c, titled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017," applies.

(4) whether the opinion is from a specialist and, if it is, it will be accorded greater weight; and (5) other relevant but unspecified factors.  20 C.F.R. § 404.1527(b) & (c)(1)-(6).

The opinion of the claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to the contrary.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). This is so because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  20 C.F.R. § 404.1527(c)(2).  "This requires a relationship of both duration and frequency."  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).

The reasons for giving little weight to the opinion of the treating physician must be supported by substantial evidence, Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated. Phillips, 357 F.3d at 1241.  "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no

weight, and failure to do so is reversible error."  MacGregor, 786 F.2d at

1053.

The ALJ may discount the treating physician's opinion if good cause

exists to do so.  Hillsman v. Bowen, 804 F. 2d 1179, 1181 (11th Cir. 1986).

Good cause may be found when the opinion is "not bolstered by the

evidence," the evidence "supported a contrary finding," the opinion is

"conclusory or inconsistent with [the treating physician's own medical

records," the statement "contains no [supporting] clinical data or

information," the opinion "is unsubstantiated by any clinical or laboratory

findings," or the opinion "is not accompanied by objective medical evidence

or is wholly conclusory."  Lewis, 125 F.3d at 1440; Edwards v. Sullivan, 937

F.2d 580, 583-84 (11th Cir. 1991) (citing Schnorr v. Bowen, 816 F.2d 578,

582 (11th Cir. 1987)).  Where a treating physician has merely made

conclusory statements, the ALJ may afford them such weight to the extent

they are supported by clinical or laboratory findings and are consistent with

other evidence as to a claimant's impairments.  Wheeler v. Heckler, 784

F.2d 1073, 1075 (11th Cir. 1986).

Opinions on some issues, such as whether the claimant is unable to

work, the claimant's RFC, and the application of vocational factors, "are not

medical opinions, . . . but are, instead, opinions on issues reserved to the

Commissioner because they are administrative findings that are dispositive of the case; i.e., that would direct the determination or decision of disability."  20 C.F.R. § 404.1527(d); *see* Bell v. Bowen, 796 F.2d 1350, 1353-54 (11th Cir. 1986).  "[T]reating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance."  SSR 96-5p, 1996 SSR LEXIS 2, at *6 (July 2, 1996) (rescinded eff. Mar. 27, 2017).  Although physician's opinions about what a claimant can still do or the claimant's restrictions are relevant evidence, such opinions are not determinative because the ALJ has responsibility of assessing the claimant's RFC.

Dr. Kaufman saw Plaintiff on two occasions – March 17, 2014, and August 7, 2014.  Tr. 934, 937.  He provided his mental RFC assessment on the same date as his first evaluation and before Plaintiff successfully completed the substance abuse program on May 28, 2014.  Tr. 801-03, 934.

Assuming Dr. Kaufman is a treating physician, his opinion does not meet the standard for an opinion from a treating physician and, as a result, his opinion was not due any deference.  *See* 20 C.F.R. § 404.1502 (A physician must have had an ongoing treatment relationship with a claimant to qualify as a treating source; an ongoing treatment relationship is one

with the claimant saw the physician with a frequency consistent with accepted medical practice for the claimant's conditions).  Nevertheless, the ALJ considered Dr. Kaufman's opinion and gave great weight to those portions of his opinion that were consistent with the evidence, namely his opinions that Plaintiff would have no more than moderate limitations of functioning.  Tr. 102-03, 107-08.  The ALJ discounted those portions of his opinion that were more restrictive, namely his opinion that Plaintiff would have marked limitations in certain areas because the opinions were unsupported and inconsistent with the evidence.  Tr. 107-08, 802-03.  *See* 20 C.F.R § 404.1527(c)(3)-(4).  The ALJ further noted that Dr. Kaufman's opinion is given little weight in light of Plaintiff's substance abuse, Tr. 107-08, 112, but that her functioning improved when not using drugs.[16]  *See generally* Gay v. Acting Comm'r of Soc. Sec. Admin., 706 F. App'x 978, 980 (11th Cir. 2017) (unpublished).

Substantial evidence supports the ALJ's consideration of the medical evidence of record, including Dr. Kaufman's evaluations, and Plaintiff's reports of daily activities, *see* Tr. 104-05, 110-12.  *See* Ybarra v. Comm'r of Soc. Sec., 658 F. App'x 538, 543 (11th Cir. 2016) (unpublished).  Aside

---

[16] The ALJ noted, in part: "Specifically, without the disorientation of drug abuse, the claimant maintains an ability to stay on task and no longer requires breaks at will." Tr. 112.  Also, "[t]he record indicates that the claimant's mental symptomology is mild when abstinent from drug use."  *Id.*

from Dr. Kaufman's limited evaluation, no treating physician opined that Plaintiff's impairments are of such severity as to preclude her from working in any capacity when not using substances.

Substantial evidence supports the ALJ's RFC assessment that if Plaintiff stops her substance use, she can perform light work with limitations. Relying on the vocational expert's testimony, Plaintiff could perform other jobs in the national economy. No error has been shown. Tr. 111-15.

## IV. Conclusion

Considering the record as a whole, the ALJ's findings are based upon substantial evidence in the record and the ALJ correctly applied the law. Accordingly, it is respectfully recommended that the decision of the Commissioner to deny Plaintiff's applications for Social Security benefits be **AFFIRMED** and Judgment entered for Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on May 14, 2018.

s/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon**

all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.